UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

VIRGIL GREEN,

                Plaintiff,                Case No. 1:10-cv-1263

v.                                              Honorable Robert J. Jonker

A. BRADLEY et al.,

                Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Koenigsknecht, Helms, Stevenson, Trierweiler and Fenn. The Court will serve the complaint against Defendant Bradley.

**Discussion**

I. Factual allegations

Plaintiff Virgil Green presently is incarcerated with the Michigan Department of Corrections (MDOC) and housed at the Lakeland Correctional Facility (LCF), though the facts underlying his complaint occurred while he was housed at the Carson City Correctional Facility (DRF). Plaintiff sues the following DRF employees: Food Service Leader A. Bradley; Food Service Director (unknown) Koenigsknecht; Custody Officers (unknown) Helms and (unknown) Stevenson; Deputy Warden T. Trierweiler; and Assistant Resident Unit Supervisor (ARUS) Craig T. Fenn.

Plaintiff alleges that after he arrived at DRF on May 17, 2010, he immediately began to experience problems with various officers refusing to address him by his Muslim name (Mu'eem Abdullah Rashad) rather than the name under which he was committed to the MDOC (Virgil Green). Plaintiff alleges that the officers' refusal is in violation of MDOC policy. Plaintiff filed many complaints and grievances about the problem. As a result, he contends that DRF officials developed a dislike of him and subjected him to retaliation.

Specifically, Plaintiff states that he was hired into the DRF food service department on June 10, 2010. He alleges that he immediately came under attack by certain unnamed officers about whom he had filed complaints and who frequently were assigned to the department to oversee meal lines. Plaintiff alleges that Defendant Food Service Leader Bradley refused to address him by his legal name. Plaintiff complained to Bradley and presented her with a copy of the relevant MDOC records office memorandum of May 26, 2010. Following that interaction, Bradley allegedly began a campaign of harassment, finding false reasons to yell at Plaintiff in front of other prisoners and whispering with other unnamed custody officers and pointing at Plaintiff. On July 22, 2010, Plaintiff

was promoted from an unskilled food service position that paid $1.75 per hour to a semi-skilled position that paid the equivalent of $2.70 per hour. Plaintiff had been working very hard to be promoted, as his prison employment was his sole source of funds and he was attempting to pay off his outstanding federal-court filing fees and other institutional debts so that he could have more than $10.00 per month for personal use.

On July 24, 2010, Plaintiff filed a complaint with Warden Lafler about Sergeant (unknown) Demner's failure to prevent his custody officers from harassing Plaintiff. According to Plaintiff, Defendant Bradley was close to Sergeant Demner and, after she learned of Plaintiff's complaint about Demner, Bradley became more verbally abusive. On August 10, 2010, Bradley yelled at Plaintiff in front of other food service workers. On August 12, 2010, Bradley again yelled at and berated Plaintiff in front of others. Plaintiff allegedly reported Bradley's continued abuse to the food service director (identified elsewhere as Defendant Koenigsknecht), who stated that he would talk to Bradley. The following day, when Plaintiff reported to work at 5:30 a.m., Defendant Bradley, Supervisor Bloomfield, and Defendant Helms were waiting in the food service office for Plaintiff. Bloomfield came out of the office and began to give Plaintiff his work tools. Defendant Bradley then came out of the office, stating, "I want you in the office now!!." (Compl., ¶ 32, Page ID #6.) Bradley began to lecture Plaintiff about how he should do his job, though she was not his supervisor. Plaintiff asked Bradley to stop and threatened to file a grievance against Bradley for harassing and abusive conduct. Bradley then ordered Plaintiff to leave the office. Shortly thereafter, Defendant Stevenson informed Plaintiff that he had to leave work.

On August 14, 2010, Plaintiff was charged with the major misconduct charges of "Creating a Disturbance" and "Insolence." Plaintiff does not allege in the complaint who filed the

misconduct charge, though his attachments to the complaint reveal that Defendant Bradley wrote the misconduct. (Compl., Att. A, docket #1-1 at 4, Page ID # 7.) Plaintiff alleges that Bradley conspired with Defendants Koenigsknecht, Helms and Stevenson to have it filed.

Plaintiff was laid-in from work on August 15, 2010, pending the resolution of the misconduct charges. That same day, Plaintiff requested a grievance form so that he could file a grievance against Bradley for filing a false misconduct ticket. The grievance coordinator denied his request because Plaintiff was attempting to grieve the merits of the misconduct. Plaintiff renewed his request for a grievance form, explaining that he was only attempting to exhaust a retaliation claim against Bradley. The grievance coordinator again denied his request on August 19, 2010. Plaintiff defended the misconduct charge at a hearing on August 31, 2010. The hearing officer refused to consider the retaliation defense and rejected certain of Plaintiff's evidence relating to the defense. Plaintiff was convicted of the insolence charge, but was found not guilty of the creating-a-disturbance charge. He was sentenced to five days of top-lock, and he lost 30 days of disciplinary credit. Because of the conviction on a major misconduct charge, Plaintiff also lost his job, which was the best-paying job in the prison. Plaintiff alleges that Bradley knew how much the job meant to Plaintiff. Plaintiff appealed his misconduct conviction on September 17, 2010, and it was denied on October 11, 2010.

On September 6, 2010, the classification director issued Plaintiff a new work detail for food service, which placed Plaintiff back in the same position at the same rate of pay, beginning on September 7, 2010 at 5:30 a.m. The custody unit, however, was not informed about his need to be released at 5:30 a.m. for work. Officer Genson told Plaintiff that he would inquire with food service about the problem. Genson subsequently reported back to Plaintiff that Defendant Bradley

had informed Genson that she did not want Plaintiff back. Genson spoke with the classification director, L. Beecher, who told Genson that she would check into the matter. Beecher never called Genson back. However, Plaintiff received another food service work detail at 8:00 that evening, which instructed Plaintiff to report on September 8, 2010 at 5:30 a.m. Later that night, Plaintiff was informed by the third-shift custody officer that food service did not want him to come in.

In the interim, on September 6, 2010, Plaintiff requested a grievance form from the grievance coordinator, intending to file a grievance against Bradley for retaliation. The grievance coordinator did not respond to the request. Plaintiff wrote a complaint to Defendant Deputy Warden Trierweiler on September 7. Defendant Trierweiler never responded. On September 7, 2010, Plaintiff's period of modified grievance access ended, so he submitted a grievance against Bradley alleging retaliation.[1] The grievance coordinator, who is not a Defendant in the action, allegedly refused to file his grievance in retaliation against her for her prior denials of grievance forms. On September 9, 2010, Plaintiff was informed that he was being transferred. Plaintiff alleges that Defendant ARUS Fenn initiated the transfer, purportedly in conspiracy with Bradley and in retaliation for Plaintiff's complaints about Bradley.

Plaintiff seeks injunctive relief, together with compensatory and punitive damages.

---

[1]Under Michigan Department of Corrections policy, a prisoner is placed on modified access for filing "an excessive number of grievances which are frivolous, vague, duplicative, non-meritorious, raise non-grievable issues, or contain prohibited language. . .or [are] unfounded . . . ." MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ HH. (eff. July 9, 2007). The modified access period is ninety days and may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance. *Id.* While on modified access, the prisoner only can obtain grievance forms through the Step I coordinator, who determines whether the issue is grievable and otherwise meets the criteria under the grievance policy. *Id.*, ¶ KK.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 129 S. Ct. at 1950 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, ___ F.3d ___, 2010 WL 5288892, at *2 (6th Cir. Dec. 28, 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### B. Conspiracy

Plaintiff alleges that Defendants Koenigsknecht, Fenn, Helms, Trierweiler and Stevenson conspired with Bradley to inflict emotional distress on Plaintiff because Plaintiff had exercised his constitutional right to file grievances. To state a claim for conspiracy, a plaintiff must plead with particularity, as vague and conclusory allegations unsupported by material facts are insufficient. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987); *Smith v. Rose*, 760 F.2d 102, 106 (6th Cir. 1985); *Pukyrys v. Olson*, No. 95-1778, 1996 WL 636140 at *1 (6th Cir. Oct. 30, 1996). A plaintiff's allegations must show (1) the existence or execution of the claimed conspiracy, (2) overt acts relating to the promotion of the conspiracy, (3) a link between the alleged conspirators, and (4) an agreement by the conspirators to commit an act depriving plaintiff of a federal right. *Lepley v. Dresser*, 681 F.Supp. 418, 422 (W.D. Mich. 1988). "[V]ague allegations of a wide-ranging conspiracy are wholly conclusory and are, therefore, insufficient to state a claim." *Hartsfield v. Mayer*, No. 95-1411, 1196 WL 43541, at *3 (6th Cir. Feb. 1, 1996). Similarly, a simple allegation that defendants conspired to cover up wrongful actions is too conclusory and too speculative to state a claim of conspiracy. *Birrell v. State of Mich.,* No. 94-2456, 1995 WL 355662, at *2 (6th Cir. June 13, 1995).

Plaintiff's allegations of conspiracy are vague, conclusory and speculative. He alleges no facts that would support any of the elements of a claim of conspiracy. Therefore, he fails to state a claim for conspiracy.

### B. Supervisory Liability

Other than his conclusory conspiracy claim, Plaintiff's only allegation against Defendant Trierweiler is that he failed to respond to Plaintiff's complaint about Bradley and failed to prevent Bradley's retaliatory conduct. Similarly, Plaintiff's only allegation against Defendant Koenigsknecht is that he failed to address Plaintiff's August 12, 2010 complaint about Defendant Bradley.

Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 129 S. Ct. at 1948; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 129 S. Ct. at 1948. Plaintiff has failed to

allege that Defendants Trierweiler and Koenigsknecht engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against them.

## C. Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith*, 250 F.3d at 1037.

Plaintiff alleges that, in retaliation for Plaintiff's grievances, Defendant Bradley engaged in a pattern of harassment and filed a retaliatory misconduct charge against Plaintiff. Plaintiff's factual allegations against Bradley are sufficient to state a retaliation claim.

Plaintiff next claims that Defendants Helms and Stevenson retaliated against him. However, Plaintiff's factual allegations against Helms and Stevenson are wholly insufficient to demonstrate either that they took adverse action against Plaintiff or that any action was motivated by Plaintiff's grievances. With respect to Defendant Helms, Plaintiff makes no factual allegation other than that Helms was in the food service office with Bradley when Plaintiff arrived for his job

detail at 5:30 a.m. on August 12, 2010. Plaintiff does not allege that Helms took any action against Plaintiff. He therefore fails to state a claim against Defendant Helms. Similarly, Plaintiff's only factual allegation against Defendant Stevenson, is that, following Plaintiff's altercation with Plaintiff on August 12, 2010, Stevenson was the custody officer who informed Plaintiff that he had to leave food service. Plaintiff alleges no facts that would suggest that Stevenson was responsible for or participated in the decision to send Plaintiff away from work. The allegations against Stevenson therefore fail to support a retaliation claim.

Finally, Plaintiff claims that Defendant Fenn retaliated against him by initiating Plaintiff's transfer from DRF to LCF. Plaintiff, however, fails to allege sufficient facts to demonstrate that Fenn's action was sufficiently adverse to support a retaliation claim. The adverseness inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness;" the plaintiff need not show actual deterrence. *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). "Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct." *Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005); *see also Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003) ("transfer from one prison to another prison cannot rise to the level of an adverse action because it would not deter a person of ordinary firmness from the exercise of his First Amendment rights"). If, however, a foreseeable consequence of a transfer would be to substantially inhibit a prisoner's ability to access the courts, then such a transfer could be considered an "adverse action" that would deter a person of ordinary firmness from continuing to engage in the protected conduct. *See Siggers-El*, 412 F.3d

at 702 (holding that a transfer was an "adverse action," where the transfer resulted in plaintiff losing a high paying job that paid for his lawyer fees and moved him further from the attorney); *Johnson v. Beardslee*, No. 1:06-CV-374, 2007 WL 2302378, at *5 (W.D. Mich. Aug. 8, 2007). Similarly, the Sixth Circuit has held that a transfer to segregation or to an area of the prison used to house mentally disturbed inmates could be sufficiently adverse to support a retaliation claim. *See Thaddeus-X*, 175 F.3d at 398; *see also Hill v. Lappin*, ___ F.3d ___, 2010 WL 5288892, at *2 (6th Cir. Dec. 28, 2010) (holding that transfer to administrative segregation or another prison's lock-down unit or can be sufficient to constitute adverse action).

Here, unlike in *Siggers-El*, 412 F.3d at 702, Plaintiff's transfer did not affect his ability to access the courts. Since he already had lost his food-service job, Defendant Fenn's transfer did not impact his ability to pay his outstanding federal-court filing fees. In addition, Plaintiff's outstanding obligations to pay federal-court filing fees have no impact on his ability to file new federal actions and therefore cannot affect his ability to access the courts. Moreover, Plaintiff does not allege that he was transferred to administrative segregation or other heightened-security unit of another facility. Indeed, according to the complaint and attachments, Plaintiff was transferred from a Level-II unit at one facility to another Level-II facility. For all these reasons, Plaintiff fails to allege that Fenn's conduct was sufficiently adverse.

Further, Plaintiff alleges no facts that would support a finding that Fenn's conduct was causally connected to Plaintiff's grievances against other DRF employees. It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th

Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive). Plaintiff merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendant Fenn retaliated against him because he filed a grievance against other DRF officers. Accordingly, his speculative allegation fails to state a claim.

## **Conclusion**

Having conducted the review now required by the Prison Litigation Reform Act, the Court determines that Defendants Koenigsknecht, Helms, Stevenson, Trierweiler and Fenn will be dismissed for failure to state a claim under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendant Bradley.

An Order consistent with this Opinion will be entered.


Dated:  March 1, 2011                    /s/ Robert J. Jonker
                                         ROBERT J. JONKER
                                         UNITED STATES DISTRICT JUDGE